## MICHAEL ULRICH V. THE PEOPLE.

*Assault with intent to ravish—Prosecuting counsel—Juror's competency—Procured confessions—Maps in evidence.*

The prosecuting attorney, by the court's leave, can have the aid of counsel in a criminal prosecution if the counsel is not disqualified by interest or otherwise.

A juror who believes that he can render an impartial verdict according to the evidence is not disqualified by having read a newspaper item from which he has formed an opinion which, though not of a fixed character, it would take evidence to remove.

In a criminal prosecution it is proper to lay before the jury such circumstances as will give them a connected and intelligible view of what was discovered by acting upon them.

A confession obtained by a private person by saying to the accused: "I know your father, and you had better tell me so I can tell him so that he can help you," is not obtained by duress where there is no reason to believe that the person obtaining it, or the father of the accused, could influence the prosecution.

Where a conversation, partly in a foreign language, has been testified to and interpreted by the witness on cross-examination, it is not error to refuse to allow it to be again detailed to test the correctness of the translation where that is not seriously questioned.

In a prosecution for an assault with intent to ravish, it is discretionary with the court to allow somewhat leading questions to the complaining witness as to her outcries at the time of the offense and as to the length of time she was confined to her bed afterwards.

It is not error to exclude the use of a map in examining a witness who does not understand maps.

It is not error to refuse to permit farther inquiries on matters already fully examined into, where it does not appear that additional or important information is excluded.

Where an expert had testified that a certain injury had in his opinion been inflicted with a hard instrument more or less sharp, and that he could not tell what it was, it is not error to exclude questions as to the probability that such an instrument could be used under specified circumstances without injuring other parts of the body.

An abstract question not confined to matters brought out upon direct examination in a criminal case is properly excluded on cross-examination.

In a prosecution for an assault with intent to commit rape in a field of growing wheat, evidence that five or six weeks afterwards, and also after harvest, an examination of the ground was made and no sign of a struggle found, was properly excluded for remoteness; also evidence of experiments in lifting girls of different weight over a rail fence to show that the testimony of the complaining witness that she was dragged over the fence by the accused was not true. It is of little consequence whether she was dragged over or compelled to get over.

It is not fatal error to refuse to give an instruction in the language of the request if it is substantially given in the charge and in such a manner that the jury could not be misled by the refusal.

Error to Saginaw. Submitted June 19. Decided Oct. 9.

INFORMATION FOR RAPE. Respondent was convicted of an assault with intent to commit rape.

*John McArthur, Wm. H. Sweet* and *Wm. A. Clark* for plaintiff in error. The prosecuting attorney must act impartially, *Meister v. People*, 31 Mich., 104; *Wellar v. People*, 30 Mich., 24; *Hurd v. People*, 25 Mich., 406; an opinion as to guilt should disqualify a juror, *People v. Rathburn*, 21 Wend., 509; *People v. Boughton*, 1 Edm. (N. Y.), 140; in a prosecution for rape, evidence of the particulars of a complaint made by the victim to a witness is inadmissible, Archibald Crim. Pr. & Pl., 169; 3 Starkie's Ev., 951; Whart. Amer. Crim. Law, § 665; 1 Phil. Ev., 184; 1 East P. C., 444–5; 1 Hale P. C., 633; 2 Russ. on Crimes, 751; 1 Greenl. Ev., § 102; 3 id., § 213; *Reg. v. Osborne*, C. & M., 622; *Rex v. Megson*, 9 C. & P., 420; *Stephen v. State*, 11 Ga., 225; *Pleasant v. State*, 15 Ark., 624; *Johnson v. State*, 17 Ohio, 593; *Regina v. Walker*, 2 M. & R., 212; a confession drawn from an accused person by giving him hopes of help is not voluntary, *Rex v. Kingston*, 4 C. & P., 387; *Rex v. Dennie*, id., 483; *State v. Phelps*, 11 Vt., 116; *Boyd v. State*, 2 Humph., 39; *Rex. v. Walkley*, 6 C. & P., 175; *Rex v. Mills*, id., 146; *Rex v. Thomas*, id., 353; *Reg. v. Ann Hearn*, 1 C. & M., 109; *Reg. v. Sarah Taylor*, 8

C. & P., 733; *People v. McMahon,* 15 N. Y., 384:
*Phillips v. People,* 57 Barb., 363; 1 Phil. Ev., 546;
and if the suggestion was made in the presence of
the officer who arrested the accused and by one who
helped arrest him, it should be excluded for that reason,
*State v. Carr,* 37 Vt., 19; *Rex v. Shaw,* 6 C. & P., 372;
*Reg. v. Laugher,* 2 C. & K., 225; 2 Russ on Crimes,
838; the testimony of the injured party should be care-
fully scrutinized, *People v. Hulse,* 3 Hill, 309; conviction
for rape requires evidence that the girl made the utmost
resistance and showed the utmost reluctance in her
power, *Strang v. People,* 24 Mich., 1; *Don Moran v. People,*
25 Mich., 356; *People v. Lynch,* 29 Mich., 274; *De Foe v.
People,* 22 Mich., 224; *People v. Morrison,* 1 Park. Cr.
Rep., 625; *People v. Abbot,* 19 Wend., 192.

Attorney General *Otto Kirchner* for the People.

MARSTON, J. The respondent was convicted of an
assault with intent to commit the crime of rape, and
sentenced to the State House of Correction at Ionia.
Errors are alleged to the rulings and charge of the court,
which will be considered in order, so far as deemed
important.

*First.* When the case was called for trial and before
the jury was sworn, the prosecuting attorney stated to
the court that he desired to have his partner assist him
in the trial, alleging as a reason therefor, that having
been steadily engaged for some ten or eleven days in
the trial of causes, and on account of the large number
of witnesses to be examined in this case, he did not
feel equal to the task. An objection was interposed by
counsel for the respondent, unless the prosecuting attor-
ney would "step out of the case and leave it," or would
inform the court that he was unable to conduct the trial,
and would therefore substitute his partner in his stead.
This was not done. The prosecuting attorney remained
in the case. It is also said that counsel who assisted

the prosecution, improperly and unfairly conducted the examination of one of the witnesses, in not asking certain questions upon the direct examination, in the belief that the facts would be drawn out upon the cross examination, and not being so called out, in then endeavoring to show such facts upon re-examination of the witness.

We have had occasion to hold quite recently that the prosecuting attorney, with the leave of the court, had a right to have counsel assist him in the prosecution of a criminal case, and nothing is even intimated in this case tending to show that the person chosen was in any way interested so as to disqualify him, or render him an unfit or improper person for the position, and we do not see anything in his conduct during the trial, or the examination of the witness referred to, that could tend to the prejudice of the accused, as the court sustained the objection to the questions asked upon re-examination.

*Second.* That it appeared that one of the jurors had formed and retained an opinion which evidence would be required to remove.

It appeared upon examination of this juror that he had read a little about the case,—in all about twenty lines; that from this he had formed an opinion, not of a fixed character, but which would require evidence to remove, and he believed he would be able to render an impartial verdict according to the evidence submitted upon the trial. What the opinion was, whether favorable or unfavorable to the accused, did not appear. The showing as to the incompetency of this juror was insufficient. The opinion he had formed was not based upon anything he had himself witnessed, or from information derived from any one who claimed to know the facts, but from reading a few lines in a newspaper, which could not have given a very full account of the transaction or made a very deep or lasting impression upon his mind, or one that would preclude him from an impartial examination of the facts as presented during the trial. *Holt v. People*, 13 Mich., 229.

*Third.* That while it was competent in this case to show in general terms that the person injured made complaint, yet that the court erred in allowing evidence of the particulars of such complaint to be given.

Even if we concede that the particular statements made by the girl shortly after the alleged outrage was committed, could not be shown upon the direct examination, yet it would not avail in this case, as a careful reading of the record fails to show any such examination or testimony. The testimony given as to what the girl said is of the most general character and does not attempt to give the particulars of the transaction or any part thereof. In this connection we may dispose of the objection made to the testimony given by Mrs. Bull as to what the boys who had been in the company of the injured girl said when they first returned home. They merely related that the man in whose field they had been picking thistles had detained the girl and had threatened to put them in jail. The whole purport of the statement made was to inform the girl's guardian where she was and to account for her absence. It was not known or even suspected at the time that a crime had been or would be committed, nor did it tend to implicate or identify any person. It is difficult to imagine how the introduction of this evidence could have tended in the slightest degree to prejudice or injure the accused; yet it was one of those circumstances or parts of an entire transaction proper to be laid before the jury so as to give them a connected and intelligent view of what, acting upon the information given, was afterwards discovered.

*Fourth.* That the court erred in admitting and in not afterwards striking out evidence as to the confessions made by the accused to one Miller.

It appeared that Miller accompanied the officer who made the arrest, and that after the arrest was made and as they were riding together in a buggy, Miller said to the accused: "Are you not ashamed of this matter? I

know your father and you had better tell me so I can tell him all about it, so that he can help you." It seems clear to me that what was said in answer to this was neither "forced from the mind by the flattery of hope nor by the torture of fear." The person who held out the inducement in this case, if such it could be called, had no power or authority, nor did he pretend to have, to do anything for the accused, except to inform his father of the transaction, from whom the expected help was to come. Had the inducement been made in an ambiguous manner, so that the accused may or could have supposed that the officer who was present was the one who should help him, it would have been very different. Such, however, was not this case. The help was to come from a particular person, the father of the accused, who, from aught that appears, neither had, nor could be supposed to have, any power or authority whatever to influence in any way the officers of the law or the complaining witness or her friends. Not only this, but it is not apparent what right Miller had to make such an agreement or hold out such a promise, or that it would be performed. The only legitimate inforence to be drawn from the inducement held out in this case would be that his father would aid and assist him in any prosecution that might afterwards be commenced. Such help when promised by a private individual is not in my opinion such a flattery of hope as to destroy the voluntary character of the confession made in consequence thereof. There doubtless have been cases which have gone farther than this, and which if followed would exclude what was said in this case; but in my opinion the better reason and weight of authority is the other way. 1 Greenleaf's Evidence, § 219 et seq. and note.

*Fifth.* This objection relates to the refusal of the court to permit the witness Miller to detail the conversation that took place at the house of Mrs. Bull, and to give the conversation in the language spoken.

The conversation was partly in German, and the

object in asking this detailed statement appears to have been to enable counsel, with the aid of Germans then present in court, to judge of the correctness of the witness' rendering thereof, as already testified to by him. Without passing upon the right of counsel to cross-examine the witness for such a purpose, there is a clear and sufficient answer to the objection. The witness had already upon cross-examination given the conversation in the English language, and also as it was spoken by the parties, and counsel had no right to complain, if the court refused to permit the witness to go over the same ground again. We doubt not but that if it had appeared or been seriously claimed that the witness had not correctly repeated or translated what was said, the court would have permitted farther inquiry. Such, however, is not this case as we understand it from the record.

Objection was made to certain questions asked the complaining witness as to the outeries made by her at the time the alleged offence was committed, and as to the length of time she was confined to her bed afterwards. It can hardly be seriously claimed that these were not proper subjects of inquiry, and as to the form of the question, it was, under the circumstances of this case, discretionary with the court, to permit questions somewhat leading in form to he asked.

Objection was also made to the refusal of the court to permit counsel upon cross-examination to use a map and have the complaining witness point out thereon the place where the offence was committed and other monuments in connection therewith. The prosecution and the court had already endeavored to have the witness, who was uneducated, understand this map and point out places thereon, but had failed, she having testified that she nothing about maps and had never studied them. Under such circumstances no error was committed. It was evident that the lines upon the map conveyed or represented nothing intelligible to her mind.

To her, Chinese characters would have been equally legible and as easy to be understood.

Questions were raised upon the cross-examination of the girl as to the clothing worn by her at the time, and of Mrs. Bull as to the color of the mud found upon her dress. These matters had been gone into quite fully, and it does not appear that any important or additional information was excluded by the ruling.

*Sixth.* John B. White, a practicing physician and surgeon, was examined on behalf of the prosecution and testified to having made an examination of the person of the complaining witness; that he found certain injuries, one of which in his opinion had been done by a hard instrument more or less sharp. Upon cross-examination he was asked whether in his opinion such injury could have been done with a sharp instrument, say a knife, under certain circumstances as set forth in the question. He was also asked to state with what other sharp instrument than one with a keen sharp edge it could have been done. He was then farther asked what kind of an instrument in his judgment produced that wound, and in reply said he could not tell. The two previous questions were objected to and excluded, but for what reason does not appear.

From the nature of the charge in this case, if the injury in question was made by a hard instrument more or less sharp, it was wholly immaterial the kind of an instrument used or the manner of using it, or whether the injury could have been done with a knife when the parties were in a certain position or otherwise. It was not claimed by the prosecution that this injury was done with a knife or at that particular time when the parties were in the position as stated in the question, more especially as the witness afterwards testifies that he could not tell with what kind of an instrument the injury was produced. We are of opinion, therefore, that these questions and those following, in reference to the probability of using such an instrument without injuring

other parts, and of there being other wounds upon the person of the complainant, in case she made certain resistance, were under the circumstances, the forms of the questions and the issue in this case, properly excluded.

The question asked the witness McCarty as to the appearance of blood was properly excluded. Had the question been confined to the matter spoken of . by the witness upon his direct examination it would have been different, but the question asked was an abstract one, and, not proper to be asked this witness.

*Seventh.* Evidence was offered to show that a month or six weeks after the injury in question had been committed an examination was made in the wheat field, and again after the wheat was harvested, and that no signs of a struggle were then discovered. -

This was very properly excluded as being altogether too remote to be entitled to any consideration in the case. The same is true of the experiments made in attempting to lift girls over this fence for the purpose of contradicting the girl wherein she testified that the respondent had dragged her over the fence. Whether she was literally dragged over by force or got over voluntarily through fear was of but slight consequence in the case. Manufactured evidence is not the most reliable, and the cases are few where it ever should be admitted. This is not one of them.

*Eighth.* Error is alleged to the refusal of the court to give the second request to charge, which was as follows:

"Should the jury find that the defendant had sexual intercourse with Sophia Dill, such intercourse would not be rape if she voluntarily submitted to him. The jury in order to convict should find from the evidence that the girl made the utmost resistance, and manifested the utmost reluctance in her power."

The first sentence of this request was given in the language of the request and the second refused. In that connection the court said:

"In every case the will of the female alleged to

have been outraged must have been overcome either by force, violence, or fear; and to indicate whether or not such will has been overcome it is proper to consider whether or not she exerted herself to the utmost to prevent the commission of the outrage, and evidence showing that she did not so exert herself may properly be considered to determine whether or not she did not consent to the commission of the act. If she consents in the least there is not an opposing will and the crime as charged would not have been accomplished."

The court then proceeded to refer to the evidence and to give other requests and then said:

"The defendant requests me to instruct you 'that if you find that she did not make the utmost resistance, and manifest the utmost reluctance, that the offense of rape was not committed.' You are to consider, gentlemen, the age of the girl, the timidity and fear which may have overpowered her on that occasion, and say whether or not, in your judgment, she did, in view of all the circumstances of the case, oppose the act thus attempted to be perpetrated upon her, or that was perpetrated upon her on this occasion. Did she consent, or did her will oppose this act? The resistance that she made would simply be evidence of an opposing will. She might or might not make all the resistance within her power as her will might or might not be overcome with fear."

Taking all that is said upon this subject it is not at all clear that the entire request was not given. In the first instance the court refused the request, but afterwards repeated it again to the jury as what he had been requested to charge, and then proceeded to instruct the jury as to what they were to consider in order to ascertain whether she opposed or consented to the act. My own impression is, that taking this request as read to the jury the second time, the court intended it as an instruction and the jury must have so considered it. But if this were not so, I am still of opinion that the court submitted the question to the jury under proper instructions. We have frequently held that even a proper request need not be given in the language of counsel, if the court gives it substantially in the charge and in such a manner that the jury could not be misled by the refusal, and this we think was done in this case.

Exceptions were taken to the court's review of and comments upon the testimony, in charging the jury. We fail however to discover any error in this respect, or in what the court said to the jury on their return into court in answer to their question.

Upon a careful review of the entire record we fail to discover any error and the judgment must therefore be affirmed.

The other Justices concurred.