### THE PEOPLE v. HUGH CLINE AND ERWIN W. ELLIS.

*False pretenses—Bill of exceptions—Handwriting—Identity of names— Prosecutor disqualified by relationship to complaining witness.*

An information for obtaining property by false pretenses concerning a mortgage assigned to the defrauded party is sufficient if it alleges in effect that the mortgage was assigned to him directly, that the false representations were made to induce him to purchase it, and that in reliance upon the statements and representations made he did purchase it and parted with his property thereafter.

Where the evidence is not made part of the bill of exceptions, but is merely printed with it, the Supreme Court will not examine it to ascertain the facts.

Where the bill of exceptions does not purport to set forth all the evidence, it must be assumed that there was enough to warrant the conclusion of the court.

One is not guilty of obtaining property by false pretenses by merely being present when it is received and taking part of it, even if he had then full knowledge of the representations made to obtain it.

In a prosecution for obtaining property by the assignment of a fabricated mortgage and accompanying note, proof by comparison of hand-

----

writings that the signature to the assignment and the indorsements on the note were in the same handwriting as the body of the mortgage, and that the signatures were forged, is not sufficient to connect the respondent with the offense if it is not also shown as a basis for the comparison that the handwriting in any paper is actually his.

An information for obtaining property by using a fabricated mortgage alleged the false representation that the pretended mortgager lived somewhere in a particular quarter of the State. *Held* that evidence that a person of that name had lived in another part of the State and was dead was not enough to establish the fabrication of the mortgage, especially if it was not shown that the pretended mortgager had not signed it, or that a person of that name had been represented as owner and as the person who had signed.

Identity of common names and of residence in cities or long settled localities is not enough to establish identity of persons where the personal liberty of others depends on the fact.

A prosecuting attorney is disqualified from prosecuting for obtaining money by false pretenses where the complaining witness is his brother, and a firm to which he himself belongs is affected by the transaction.

Exceptions from Huron. Submitted June 22. Decided October 6.

FALSE PRETENSES. Information against Hugh Cline and Erwin W. Ellis, otherwise known as James H. Warner, charging that they "on the 2d day of August, A. D. 1879, at the township of Port Austin in the county of Huron. aforesaid, unlawfully, knowingly and designedly, did, with intent to defraud and cheat Thomas Winsor and Mark Carrington, feloniously, knowingly, falsely, designedly and deceitfully, represent, assert, and pretend to Thomas Winsor and Mark Carrington, who then composed the firm of Thomas Winsor & Company, that certain paper writings which the said Hugh Cline and Erwin W. Ellis * * then and there produced and delivered to said Thomas Winsor and Mark Carrington purporting to be a mortgage and accompanying promissory note made by Strother M. Beeson on the 6th day of June, A. D. 1879, on all the piece or parcel of land situate in the township of Rubicon, county of Huron and State of Michigan, known and described as follows [description] for the payment to the order of James H. Warner of the sum

of three hundred and fifty dollars, two years after the date thereof, with ten per cent. interest per annum until paid, said paper writing purporting to be a mortgage as aforesaid, then and there further purporting to have been signed, sealed and delivered, in the presence of John Watson and Cyrus Z. Jackson, as witnesses, and that the execution thereof was acknowledged by Strother M. Beeson, before John P. Stillwell, as a Justice of the Peace in and for said county of Huron, was a genuine and valid mortgage and note duly signed, sealed, executed and acknowledged by Strother M. Beeson. That they, the said Hugh Cline and Erwin W. Ellis, otherwise known as James H. Warner, knew and were acquainted with Strother M. Beeson, that he signed said paper writings, purporting to be a mortgage and note, and that he, the said Strother M. Beeson, then lived in the central part of this State, and that they, the said Hugh Cline, and Erwin W. Ellis, otherwise known as James H. Warner, knew that Strother M. Beeson signed said paper writing, purporting to be a mortgage, and that he was the owner of the land therein described at the time of the execution thereof. That they, the said Hugh Cline, and Erwin W. Ellis, otherwise known as James H. Warner, had had an assignment of said paper writing, purporting to be a mortgage, executed by the said James H. Warner, at White Rock, in the county of Huron, aforesaid, before Charles S. McKee, a Notary Public in and for said county of Huron, on the 11th day of July, A. D. 1879, because the said James H. Warner was then working at White Rock, in said county of Huron; that the said Hugh Cline had become the owner of said paper writing, by having traded his homestead of 160 acres of land, to said James H. Warner, therefor; and that they, the said Hugh Cline, and James H. Warner, had had an assignment of said paper writing, purporting to be a mortgage, made directly to said Thomas Winsor, and Mark Carrington, in the firm name of Thomas Winsor & Company, which assignment, in writing, was, on said second day of August, at said township of Port Austin, delivered to said Thomas Winsor, and Mark Carrington, by means of which said false pretenses the said Hugh

Cline, and Erwin W. Ellis, * * did on the said second day of August, A. D. 1879, at the township of Port Austin, aforesaid, designedly and feloniously obtain from the said Thomas Winsor, and Mark Carrington, in exchange for said paper writings, the following personal property and valuable things of the goods and property of the said Thomas Winsor, and Mark Carrington, to wit [invoice]. Defendants were convicted, and the case is brought up on exceptions. Reversed.

Prosecuting Attorney *Richard Winsor* for the people. The prosecuting attorney must prosecute on behalf of the people, even before justices, (Comp. L. § 530; *People v. Navarre* 22 Mich. 4; *Meister v. People* 31 Mich. 102; and is disabled only by the acceptance of a fee, or interest in a given result: *Sneed v. People* 38 Mich. 251; *People v. Hurst* 41 Mich. 330; handwriting may be identified by a comparison of papers in the case: *Vinton v. Peck* 14 Mich. 291; *Van Sickle v. People* 29 Mich. 64; *Foster Will Case* 34 Mich. 25.

*James H. Hall* and *Atkinson & Atkinson* for respondent.

MARSTON, C. J. We are of opinion that the information filed in this case was not fatally defective within the ruling of *Enders v. The People* 20 Mich. 240. In this case the false pretenses are fully set forth, and the information shows an assignment of the mortgage direct to the parties injured, and alleges that by means of said false pretenses Cline and Ellis obtained from Winsor and Carrington, *in exchange for said paper writings*, the goods, etc. The information in other respects contains the usual formal allegations. It is thus, we think, sufficiently alleged, and appears from the allegations, that the false representations were made to induce Winsor and Carrington to purchase the mortgage referred to, and that in reliance upon the statements and representations made they did purchase the same and parted with their property therefor. It is, we think, clear that they relied upon the statements and representations made, and parted with their property upon the strength thereof and of the

assignment, or what purported to be the assignment to them of the mortgage. It is also urged that there was no evidence in the case tending to show that any of the representations alleged were made by defendant Ellis, and that he was therefore entitled to an acquittal.

If it appeared by the bill of exceptions that all the evidence tending to show Ellis' connection with the matter was set forth therein, the view taken would be correct. We cannot go outside of the bill of exceptions and examine the printed testimony in order to ascertain what the facts were, as the evidence is not made a part of the bill.

It does not appear that Ellis was present at the time the false representations were made, and the trade consummated, or that he had any knowledge thereof, or that such was the design or intention of respondents in preparing these papers— if they did—if that would be sufficient. The fact that he was present afterwards, when Cline received a part of the consideration, and that Cline gave Ellis a part thereof, would not be sufficient, even if Ellis then had full knowledge of the representations made by Cline, which does not appear. The evidence set forth in the bill of exceptions clearly tends to show, at least in some parts, whether complete or not we need not now determine, that an offense was jointly committed by these respondents but not the one alleged and for which they were tried.

We must therefore assume that other and necessary evidence was given to connect Ellis with the representations made. If there was not, he would be entitled to his discharge.

Charles Flowers, an expert in handwriting, was examined. He compared the signatures to the assignment and the indorsement on the note with the writing in the body of the mortgage, and compared the signatures of James H. Warner to the assignment, and the indorsement of James H. Warner on the note, with the writing in the body of the mortgage, and testified that all were in the same handwriting. Similar testimony as to the other signatures was given by this witness, and also that the signatures appeared like forged hands.

What tendency this evidence had to connect the respondents with the transaction we are not advised. It is true these papers were in evidence, but we do not understand that any part of the same was admitted, or appeared beyond dispute to have been the handwriting of either of the respondents, so that the same could be taken as a basis for comparison. Admitting the fact that these instruments and the signatures thereto were in the handwriting of one or two persons, would not necessarily tend to connect the respondents therewith. Proof that the body of the instrument and signatures were in the same handwriting would be a link in the chain, which, with farther evidence to connect the respondents, one or both, therewith, would become material. It could not however be argued or inferred that the signature was written by the respondent, because it resembled the handwriting in the body of the instrument, unless it appeared that the handwriting in the body was actually his. The mere fact alone that the paper was already in evidence upon some other branch of the case, would not be sufficient to connect the respondents with the execution thereof.

A question was raised as to the sufficiency of the proof that one Beeson did not sign the mortgage. It was shown that Cline had represented that Beeson, the purported mortgagor, "lived somewhere in the central part of the State," and evidence was introduced "tending to show that Strother M. Beeson (the name of the mortgagor) formerly lived at Niles, and died December 30th, 1878, and that the signature to the note and mortgage was not his." If it was necessary to prove that the person whose name purported to be signed as mortgagor did not in fact sign the same, it could only be upon the assumption that he was the owner of the land, or possibly that a particular person of that name had been represented as owner and the person who signed. Neither appears to have been shown in this case. There was the representation that Strother M. Beeson "lived somewhere in the central part of the State," and that he (Cline) knew Beeson had made the mortgage. There must be very great difference in the weight of testimony upon the question of identity, based upon the

identity of names and residence only. Some names are very common, and where the residence is fixed in a city or old-settled portion of the country, without any distinct place of residence being pointed out, or some other means of identification, the proof would be too uncertain where the liberty of a citizen was at stake.

We are also of the opinion that the prosecuting attorney was disqualified from conducting the prosecution in this case. It distinctly appeared that the complaining witness was a brother of the prosecuting attorney. He testified "that he arranged with the prosecuting attorney to discount the mort-gage in question at the usual rates, and arranged with Cline that one-half the discount be charged to Cline, one-half to Winsor & Co., the complainants; * * * that he obtained from the prosecuting attorney's firm three hundred and thirty-five dollars at the time by checks." It farther appeared that the money belonged to one Carrington, for whom the firm was doing business. The prosecuting attorney was therefore distinctly interested in the result, and unable to attend the case, within the meaning of Comp. L. § 534. See also *Meister v. People* 31 Mich. 101; *Sneed v. People* 38 Mich. 251; *Ulrich v. People* 39 Mich. 249.

We are of opinion that the respondents are entitled to a new trial, and it will be certified to the court below accordingly.

GRAVES and COOLEY, JJ., concurred.

CAMPBELL, J. I concur in the result.