## THE PEOPLE v. MARK T. BUSSEY.

[See 71 Mich. 504; 80 Id. 501.]

*Criminal law—Removal of files from public office—Information—Disqualification of prosecuting officer—Waiver—Evidence.*

1. How. Stat. § 9347, making it a misdemeanor to wrongfully remove books, papers, or records from certain public offices, makes such books, papers, and records the property of the State, and an allegation of such ownership in an information filed under said section, which describes the papers alleged to have been removed, is superfluous.

2. How. Stat. § 9347, punishing the wrongful removal of books, papers, or records from certain public offices, creates three offenses:

   *a*—Willfully carrying away the property.
   *b*—Refusing to deliver it up on proper demand.
   *c*—Destroying or mutilating such property.

3. An information filed under How. Stat. § 9347, charged the respondent with carrying away "an enrolled decree, containing the bill of complaint, pleadings, and other papers" filed in and belonging to a designated chancery case. And it is held that it was unnecessary to more specifically describe the "other papers," it appearing that they were a part of the enrolled decree.

4. How. Stat. § 557, as amended by Act No. 32, Laws of 1883, forbids any attorney from prosecuting "any person for an alleged criminal offense where he is engaged or interested in any civil suit or proceeding depending upon the same state of facts" against such person. And it is held that a prosecuting attorney thus disqualified cannot act in such a criminal case, even with the *unqualified consent* of the respondent.[1]

5. A respondent who presents himself as a witness in his own behalf is subject to any cross-examination which goes directly to the merits of the case.

6. On the trial of a respondent for the alleged wrongful removal from the office of the county clerk of an enrolled decree and the accompanying papers, there was no direct proof of such

[1]See *People v. Hillhouse*, 80 Mich. 580 (head-note 1).

82 MICH.—4.

removal, but the case rested upon the facts that the papers were missing, and that the respondent had an opportunity and a motive for taking them. The prosecution was allowed to show that in another criminal case, pending at the time the papers were alleged to have been taken, they were used as evidence against the respondent. And it is held that the testimony was competent, as tending to show a motive on the part of the respondent for the removal of said papers.

7. In such a case an attorney was allowed to testify that in his opinion no person other than the respondent could have had any possible motive for the removal of the papers. And it is held that it was for the jury to determine, from the facts and circumstances proven in the case, whether the respondent had any such motive, and that the opinion or inferences of the witness were not competent testimony.

Error to Jackson. (Peck, J.) Argued June 12, 1890. Decided July 2, 1890.

Respondent was convicted of the wrongful removal from a public office of certain papers, contrary to the provisions of How. Stat. § 9347. Conviction set aside, and new trial ordered. The facts are stated in the opinion.

*D. P. Sagendorph,* for respondent.

*Barkworth & Cobb,* for respondent, contended:

1. We do not believe that motive was ever permitted to be proved by the opinion of witnesses as to its existence. Such an opinion would be inadmissible even in a civil case; citing *Lemon v. Railway Co.,* 59 Mich. 618; *Anderson v. Boom Co.,* 61 Id. 489.

*A. J. Sawyer,* of counsel, for respondent, contended:

1. In statutory offenses, every essential element of the crime, as defined by the statute, must be averred in the information, either in the words of the statute or in language substantially equivalent; citing *Hall v. People,* 43 Mich. 417; *People v. Husted,* 52 Id. 624; *People v. McLean,* 68 Id. 482.

2. The statutory offense is not charged in the information, in that it does not allege ownership by the people of the State of Michigan of the papers, a demand for them, by the proper officers, of the respondent, and a refusal on his part to deliver them up. Therefore no conviction could be lawfully had, because no

crime is charged known to the law; citing *Byrnes v. People*, 37 Mich. 515.

3. The words, "and other papers," used in the information, are general words, and must be confined to papers of the same nature and kind as those named in the specific words, such as motions, orders, and the like, and cannot be enlarged so as to include evidence taken on another trial, or the exhibits offered in evidence on such trial; citing *Transportation Co. v. Moore*, 5 Mich. 368; *McDade v. People*, 29 Id. 50; *Board of Education v. Detroit*, 30 Id. 505; *Brooks v. Cook*, 44 Id. 617.

4. The respondent has not had a fair trial, because he was prosecuted by a prosecuting attorney who was deeply prejudiced, and had a personal interest in the trial; citing *Wellar v. People*, 30 Mich. 16; *People v. Gordon*, 40 Id. 716; *Meister v. People*, 31 Id. 99; *People v. Hurst*, 41 Id. 328; *People v. Cline*, 44 Id. 290; *Engle v. Chipman*, 51 Id. 524; *People v. Davis*, 52 Id. 570; *People v. Hendryx*, 58 Id. 319; *People v. Quick*, Id. 321.

5. There is no rule which will allow the credit of a witness to be impeached or assailed by the direct testimony of other witnesses to any criminality, or charge of criminality, unless he has actually been adjudged guilty, which can only be shown by a record of the judgment; citing *Driscoll v. People*, 47 Mich. 416.

*B. W. Huston,* Attorney General, for the people.

*Eugene Pringle,* Acting Prosecuting Attorney, for the people, contended:

1. As introductory or explanatory, the entire enrollment was pertinent to be offered in evidence; citing 1 Greenl. Ev. §§ 527, 538, 539.

2. Where the motive for doing an act is a legitimate subject of inquiry, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into; citing *White v. Bailey*, 10 Mich. 155; *Washburn v. People*, Id. 372, 387.

3. When a respondent offers himself as a witness, the rule as to his cross-examination is the same as in the case of any other witness, and great latitude is allowed on cross-examination; citing *Chandler v. Allison*, 10 Mich. 460, 477, 478; *Wilbur v. Flood*, 16 Id. 40; *Clemens v. Conrad*, 19 Id. 170; *Hamilton v. People*, 29 Id. 173, 182; *Jacobson v. Metzger*, 35 Id. 103; *Saunders v. People*, 38 Id. 218; *Driscoll v. People*, 47 Id. 417; *People v. Wallin*, 55 Id. 497; *McBride v. Wallace*, 62 Id. 451; *People v. Glover*, 71 Id. 303.

4. In the following cases verdicts have been set aside wholly or in part because the court failed to control or rebuke the prosecuting attorney, and to properly caution the jury, or because that officer sought to make evidence against the accused by his assertions as to facts not proved: *People v. Quick*, 58 Mich. 321; *People v. Dane*, 59 Id. 550; *People v. Carr*, 64 Id. 702; *People v. Aikin*, 66 Id. 460; *People v. Montague*, 71 Id. 447; *People v. Evans*, 72 Id. 367; *People v. Treat*, 77 Id. 348; while in the following cases the Court rebuke the impulsive or petulant remarks of the prosecutor, but hold that when the trial court, on objection being made, did his duty, such remarks were not ground for reversal: *People v. Winslow*, 39 Mich. 505; *Driscoll v. People*, 47 Id. 413; *People v. Wilson*, 55 Id. 506; *People v. Gibbs*, 70 Id. 425; *People v. Perriman*, 72 Id. 184.

5. Respondent cannot complain of remarks provoked by those of his counsel; citing *Miner v. Lorman*, 66 Mich. 530; nor can he assign error thereon unless complaint was made at the time; citing *People v. Haley*, 48 Mich. 495; *Baumier v. Antiau*, 79 Id. 509.

MORSE, J. The respondent was convicted in the circuit court for the county of Jackson upon an information charging him with having unlawfully taken into his possession, and with willfully carrying away, without the knowledge and consent of any person having lawful control and custody thereof, " an enrolled decree, containing the bill of complaint, pleadings, and other papers filed in and belonging to a certain cause theretofore determined in the circuit court for said Jackson county, in chancery, wherein Sarah T. Bussey was complainant, and said Mark T. Bussey and William H. Bussey were defendants;" the said enrolled decree, containing the bill of complaint, pleadings, and other papers in said cause, being lawfully in the court-house of said county, and in the possession and custody, and under the control, of Charles E. Snow, then and there being the clerk of said county of Jackson, and register in chancery of said circuit court for the said county of Jackson, in chancery, and being so carried away without the consent of said Charles E. Snow.

This information was filed under How. Stat. § 9347, which provides:

"That all books, papers, or records belonging, or in any wise appertaining, to the offices of clerk * * * of the several counties * * * are hereby declared to be public property, belonging to the people of the State of Michigan, to be used and preserved by and under the direction of said officers, and be by them preserved during their continuance in office; and any person or persons who shall willfully carry away, mutilate, or destroy any of such books, papers, records, or any part of the same, and any person or persons who shall retain and continue to hold the possession of any books, papers, records, or parts thereof, belonging to the aforesaid offices of clerk, * * * and shall refuse to deliver up said books, papers, records, or parts thereof, to the proper officer having charge of the office to which the said books, papers, or records belong, upon demand being made by such officer, shall, on conviction thereof, be deemed guilty of a misdemeanor, and shall be punished by fine not exceeding $1,000, or imprisonment in the State prison not exceeding three years."

After such conviction the respondent made a motion for a new trial, which was overruled. As the case must be reversed, and sent back for a new trial, it is not necessary to set out the grounds of this motion.

The sufficiency of the information is raised for the first time in this Court. It is alleged that the information should have charged that the records were the property of the State of Michigan. This was not necessary. The records were specifically described as an enrolled decree, containing the bill of complaint, pleadings, and other papers in a certain chancery cause. The statute expressly makes them the property of the State, and an allegation to that effect, after describing them, would be superfluous.

It is also argued that the offense is not complete under the statute unless it is shown that a demand was made by the proper custodian, and that after such demand the

defendant still retains possession of the records, or parts thereof, and refuses to deliver them up. The defendant's counsel was correct in what he says was his first impression on reading the statute, to wit, that it creates three offenses:

1. For willfully carrying away the property described.
2. Refusing to deliver up the property upon proper demand.
3. Destroying or mutilating the property described.

The information correctly charged the first of these offenses.

Another point is made that the words "and other papers," in the description of the property carried away, as found in the information, are general, and must be confined to papers of the same nature and kind as those named in the specific words, such as motions, orders, and the like, and that, being used in this case after the specific words "enrolled decree," and "pleadings," they cannot be held to include deeds, mortgages, and "a blank piece of paper with names written upon it." It was claimed upon the trial that among the papers tied in one bundle, and taken away by the respondent, were a deed and mortgage, written in green ink, and called the "Green Deed and Mortgage," and also a piece of paper upon which the name of Sarah T. Bussey, the respondent's wife, and with whom he was then engaged in much litigation, was written several times; and it was the theory of the prosecution that the respondent had a motive to take these papers to escape a charge of forgery. The respondent's counsel here urge that he could not lawfully be convicted of carrying away papers not specifically described and charged against him in the information, and that he had a right to know, and be specifically informed, what books, papers, or records he was charged with willfully carrying away, and that the words "other

papers" conveyed to him no intimation that he was to be tried for taking away this green deed and mortgage, and the "Practice Paper," as it was called upon the trial, and is named in the record.

The trouble with this point is—

1. That the testimony shows without dispute that these papers were a part of the enrolled decree.

2. That no objection was made at any time to the information on this account, or to the evidence in relation to it.

3. It would have been proper to show as a part of the case just what papers were taken in this bundle, or at the same time with it, as a part of the *res gestæ*, whether such papers were mentioned in the information or not.

The main objection to the conviction of the respondent is that he did not have a fair trial—

1. Because he was prosecuted by a prosecuting attorney who was deeply prejudiced against him, and had a personal interest in the trial.

2. On account of the use of improper and insulting language by such prosecuting attorney.

3. Because the respondent was compelled to answer questions irrelevant to the issue, and having a tendency to bring in other charges of crime and immoral conduct.

4. Because the court permitted the credibility of the respondent to be assailed or impeached by the direct testimony of other witnesses to criminality, or charge of criminality, of which respondent had never been adjudged guilty.

It is a fact patent in the case that the prosecuting attorney, James A. Parkinson, was, by his own admissions, prejudiced against the respondent, and employed as counsel for his wife in several civil suits against him, in most of which there was a charge of forgery, or some other offense against the laws, and that Parkinson acknowledged that upon objection he would have been found disqualified to act as the public prosecutor in this case. I was very strongly impressed upon the argument

that a new trial ought to be granted for this reason; but, upon a careful examination of the record, it appears very plainly that the respondent is not entitled to this favor on his own account because of the circumstances, and the acts of himself and his counsel upon the trial.

It appears that when Mr. Parkinson was elected prosecuting attorney of Jackson county, in the fall of 1888, he was or had been one of the solicitors for Mrs. Bussey in at least three suits in the circuit court for the county of Jackson, in chancery, one of which came to this Court. See *Bussey v. Bussey,* 71 Mich. 504 (39 N. W. Rep. 847). When he entered upon his duties as prosecuting attorney, January 1, 1889, he found two suits in behalf of the people pending against the respondent, of which the present case was one. The enrolled decree supposed to have been stolen by the respondent, Dr. Bussey, was the decree in the case that came to this Court, in which Parkinson was solicitor for Mrs. Bussey. Know_ ing this, it was undoubtedly his duty to procure some one else to prosecute the present case against the respondent. His excuse is that when the other criminal case came up in the circuit court, a charge of false pretenses, he asked for the appointment of Thomas E. Barkworth to assist him; that this request was opposed by Mr. Sagendorph, attorney for Dr. Bussey in that case, as in this, and denied by the court; that he informed Mr. Sagendorph, and the other attorneys of respondent, before the trial of this case, that he would be glad if they would object to his trying the case, so that he could not try it. No such objection being made, he did not procure another attorney, because of the additional expense to the county, and the explanation which such expense, and his declination to try the case, would require to the board of supervisors.

It appears very plainly from the record that the attorneys

of the respondent, as well as Dr. Bussey himself, were well acquainted with the fact that Parkinson was prejudiced against the doctor by reason of his being the counsel of Mrs. Bussey, and that he would be precluded from acting as prosecutor if objection was made. It seems to me that they deliberately waived this objection, and then forced, upon the trial of the case, the circumstances of Parkinson's relations with the case as attorney for Mrs. Bussey, and his feeling towards Dr. Bussey, into the evidence, for one of two purposes,—either to influence the jury against Parkinson to the benefit of the respondent, or, in case of failure in this respect, to lay the foundation for appeal to this Court. Mr. Sagendorph, in substance, admitted upon the trial that Parkinson asked him to object to his prosecuting the case, and Bussey avers that he was willing he should try it. Bussey is a sharp, shrewd man, as shown by this record, and was not deceived, either in the law or the fact, as to the situation as to Parkinson, and well knew his rights in the matter.

Notwithstanding the evident and natural feeling of Parkinson in the matter, nothing improper occurred on his part until the cross-examination of Dr. Bussey was reached, and this was provoked by the respondent. Upon objection being made to a question, Mr. Parkinson said:

"I want to go into this man's whole life.
"*The Court.* You are entitled to go into his whole life, but his business with Quinvey I do not think is essential.
"*Dr. Bussey.* I am willing. Whatever facts can be shown at the same time, I think, will compare favorably with his.
"*The Court.* Keep silent.
"*Mr. Parkinson.* I have never been convicted of forgery.
"*The Court.* That remark is totally improper for the prosecuting attorney to make."

Upon the redirect examination of respondent, his counsel opened up the matter of the prosecuting attorney's feeling in the case as follows:

"*Q.* How long have you been acquainted with Mr. Parkinson?

"*A.* I have been acquainted with him nearly all the time I have been in Jackson. I have known him, I think, from his earliest coming here.

"*Q.* What has been the state of feeling between you and Mr. Parkinson for the last three or four years?

"*A.* It has been personal animosity on his part, indignation on mine. We have not been good friends, to say the least. In the case of Sarah T. Bussey against Mark T. Bussey and Edwin B. Hamblin, there was a motion for a new trial. I put in affidavits sustaining that motion. At that time this ill feeling was existing between me and Parkinson.

"*Q.* Did Mr. Parkinson cause any of your witnesses, or persons that made affidavits, to be arrested?

"*A.* Yes, sir; they had their examination. Had one witness bound over to the circuit court to be tried for perjury. He never did anything about it then. Filed his reasons afterwards for not filing information."

The prosecuting attorney then re-examined him, and, among other things, the following appears in the record:

"*Q.* You know, ever since I came into office as prosecuting attorney, that I have been a partner of Mr. Gibson, and, as such partner, interested in civil suits of yours?

"*A.* Yes, sir.

"*Q.* You know that, by objecting to my trying these cases, I could not try them?

"*A.* I don't know whether I knew that or not. I don't know that you asked my attorneys to make the point.

"*Q.* Don't you know that I said to Mr. Sagendorph I did not want to try your criminal cases, and I wished that they would object to my trying them?

"*A.* I did not known that you said that to them.

"*Mr. Sagendorph.* You said that you would be disqualified if we would object.

"*Mr. Parkinson.* Did I not say, 'I wish you would object?'

" *Mr. Sagendorph.* I don't remember that.

" *Mr. Parkinson.* And I say so now. Any day when you will object to my fulfilling my official functions in any case against you, you will please me.

" *A.* I don't fear you at all, Mr. Parkinson. You can try any case you please. You have no proofs against me, or the State of Michigan has no claims on me.

" *Q.* That is true, possibly, as long as your wife cannot testify against you.

" *The Court.* Don't let us have this. You understand the impropriety of it, if Mr. Bussey don't. It is your duty to restrain yourself, and keep yourself within your oath as an officer."

The defendant's counsel followed this up by recalling Michael Kinney, an attorney at law, and a witness in behalf of the respondent, and attacking Mr. Parkinson as follows:

" *Q.* Did Mr. Parkinson have any conversation with you yesterday, in the court-room?

" *A.* He did..

" *Q.* Did he say to you that we were going to have a desperate case here?

" *A.* Something to that effect, or a desperate man for trial.

" *Q.* Did Mr. Parkinson say to you that you were going to be a witness in this case, and, if there was anything you knew that would favor Dr. Bussey, he wanted you to forget it?

" *A.* He did."

#### CROSS-EXAMINATION:

" *Q.* Don't you know that you have told absolute, downright falsehoods?

" *A.* No, sir; I don't know any such thing. I have been arrested at Eaton Rapids, and got clear on the examination.

" *Q.* And, before they could get another warrant out, you got out of the county?

" *A.* No, sir; my family was gone. It was just such a case as you are trying to put up on Dr. Bussey here.

" *Q.* Walking up that street that night, after these files had been found to be missing, did you not say to me that would be just like Bussey?

"*A.* No, sir; nor did say, 'I believe he is guilty, damn him, and I hope they will go for him.' Nor did I say he was one of the damnedest rascals in the country. I might have said I did not like Dr. Bussey, or his actions."

This language of Parkinson to the witness is assigned as error. We think it was provoked, and that an ordinary man, having his integrity thus impugned, would have used language of the same import; and, while Mr. Parkinson ought to have kept his temper, it is not at all surprising that he did not do so. We cannot reverse a case for an error committed under such circumstances. Mr. Parkinson was obliged, in self-defense, to go upon the stand, and deny the truth of Kinney's accusations.

This case shows the wisdom of the rule established by this Court, prohibiting the employment of private counsel by the complaining witness, or any other persons, save the public prosecutor and the board of supervisors, to assist or act in the stead of the prosecuting attorney in the prosecution of offenders against the criminal laws. This rule is attacked by one of the counsel for the people as being a new one, and having its origin in the west and south, "where the rule is that the horse-thief must be tried as a gentleman, and hung as a gentleman." It certainly can be no reproach to any section of our country that all men are treated equally, and served alike, before the law, and that in a criminal trial the worst man in the estimation of the community has the full benefit, with the best, of the presumption that every man is innocent until proven guilty. Nor is it desirable, nor is it in the interest of justice, that hate, malice, or envy should be used as instruments in the conviction of accused persons. Certainly, none of these things should actuate the prosecuting officer, or be permitted in one who assists him or fills his place. Here we see some of the effects of prejudice and ill feeling on the part of the prosecutor

against Dr. Bussey. The prosecutor himself is virtually put upon trial by the defense, and the court is occupied in unseemly wrangles between the accused and the prosecutor. It becomes necessary for the prosecuting attorney to be a witness, and make oath to his own integrity,— a matter which ought never to have been in issue in the case, and would not have been, had the trial been conducted by one known to be without bias, and impartial, as between the State and the accused. It could hardly be expected, under the circumstances, that Mr. Parkinson would not at times, in the heat of the trial, let his prejudices be manifested, and forget his duty. This shows how salutary and just is the rule so often laid down by this Court, and ever, I trust, to be adhered to, that the prosecuting attorney is a sworn minister of justice, whose duty it is to see that the innocent are protected, as well as that the guilty are brought to punishment, and who must stand indifferent as between the accused and any private interest. *Hurd v. People,* 25 Mich. 405, 415; *Meister v. People,* 31 Id. 99; *Sneed v. People,* 38 Id. 248; *People v. Hurst,* 41 Id. 328 (1 N. W. Rep. 1027); *People v. Bemis,* 51 Id. 422 (16 N. W. Rep. 794); *Wellar v. People,* 30 Id. 16; *People v. Gordon,* 40 Id. 716; *People v. Davis,* 52 Id. 570 (18 N. W. Rep. 362); *People v. Quick,* 58 Id. 322 (25 N. W. Rep. 302).

As far as the personal interest of Mr. Parkinson was concerned, or the state of his mind towards the respondent, the defendant and his counselors were well aware of it before the trial commenced, and well knew that a simple suggestion of such interest, coupled with a request that he be precluded from conducting the prosecution or taking part therein, would have put him out of the case. For some reason, they preferred him as a prosecutor, and brought into the trial afterwards the question of his interest and enmity against Dr. Bussey for their own pur-

poses, and by so doing aroused him to anger, and provoked him to bitter and improper language. The respondent ought not to profit by his own wrong in this way.

But there are other considerations that must not be lost sight of. A statute of this State forbade the appearance of Mr. Parkinson as a public prosecutor, under the circumstances; and such statute was passed in the interest of justice, and in line with the repeated holdings of this Court. The violation of this statute cannot be atoned by any waiver of the defendant; nor can any of his acts, or those of his counsel, upon the trial, serve to excuse the nullification of this law. It was not enacted for the benefit of the accused alone, but in the interest of the whole people, and with a view to the proper administration of justice and due process of law. It is a wise as well as a beneficent statute, and if enforced will prevent the profanation of the temples of justice by unseemly quarrels between prosecutor and accused,—wrangles which have a tendency to degrade the courts in the minds of the people, and to make a farce of criminal trials, as well as to both obstruct and mislead the course of justice.

Previous to 1883, we had the following statute (How. Stat. § 557) in reference to prosecuting attorneys:

"No prosecuting attorney shall receive any fee or reward from or on behalf of any prosecutor or other individual for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counsel for either party, other than for the State or county, in any civil action depending upon the same state of facts upon which any criminal prosecution, commenced or prosecuted, shall depend."

This section was amended by Act No. 32, Laws of 1883, by adding the following provision:

"Or in any action for malicious prosecution brought in consequence of any criminal prosecution commenced or prosecuted during his term of office in the county of

which he is prosecuting attorney; nor shall any attorney be permitted to prosecute, or aid in prosecuting, any person for an alleged criminal offense where he is engaged or interested in any civil suit or proceeding depending upon the same state of facts against such person, directly or indirectly."

Mr. Parkinson clearly came within the spirit, if not the letter, of this statute, and all the evil consequences against which the statute was aimed followed his entry and action as public prosecutor in this case. We are of the opinion that Mr. Parkinson could not act as prosecuting attorney in this cause, even with the unqualified consent of the respondent. The statute forbids, and for good, humane, and prudential reasons. In this view of the case, it will not be necessary further to notice the errors alleged to the remarks and conduct of Mr. Parkinson upon the trial.

It is further alleged as error that the cross-examination of the respondent was carried to an extreme and unwarrantable extent, looking towards his having been, before that, charged with forgery, and that such examination falls within the condemnation of this Court as expressed in *People v. Pinkerton,* 79 Mich. 110. This case, however, differs materially from that case. Here it was legitimate to show a motive for the commission of the offense charged. It was the theory of the prosecution that the "green deed and mortgage" were forgeries, or at least that they were alleged by Mrs. Bussey to be forgeries, and that the doctor had been charged with such forgery in the very case in which they formed a part of the enrolled decree, and that the "practice paper," so called, was one upon which the respondent had been experimenting in the direction of forgery. If this were true, it furnished an ample motive for the carrying away or destruction of these papers. Testimony in support of this theory was therefore admissible; and the respondent, having furnished himself as a witness in his own behalf,

was subject to any cross-examination which went directly to the merits of the case. The cross-examination indulged in in this respect was not "irrelevant to the issue," as it was in Pinkerton's case, where no proof of motive was necessary; and no objection was interposed on the trial against the cross-examination of Bussey as to his being charged with, and arrested for, another crime, to wit, false pretenses.

It is also claimed that Mr. Pringle was permitted to impeach the credit of Dr. Bussey by giving his testimony to identify an information filed against him for false pretenses, and what he (Pringle) did as acting prosecuting attorney before the justice in such case. The testimony of Mr. Pringle was offered to show that, in the examination of the false pretense case before the justice, this same enrolled decree alleged to have been stolen by the respondent was used in evidence in support of such charge, to show another and additional motive for the commission of the offense here charged. For this purpose the testimony was admissible, it being shown that the false pretense case was pending when these papers were alleged to have been taken by Dr. Bussey.

But there was an error committed on the trial which necessitates a reversal of the conviction. Thomas A. Wilson, an attorney at law, was permitted to testify as follows:

" *Q.* Do you know of any interest, directly or indirectly, contingent or otherwise, or possible advantage, Mrs. Bussey could have or derive from the loss or destruction of that enrollment? (Objected to by defendant. Objection overruled, and exception taken for defendant.)

"*A.* I cannot imagine any person who would derive any benefit from the destruction of those papers except Dr. Bussey. I think he could. I think those two green-ink papers, with the testimony which was then in existence or obtainable,—they were evidence of forgery; the

view I take of the matter. I mean, of course, Dr. Bussey. I did not take those papers."

There can be no possible excuse for the admission of this testimony. The opinion of the witness that no person but Dr. Bussey could have any possible motive or interest in the disappearance of these papers must have prejudiced the defendant's case. When we remember that no one saw the respondent take these papers, the question of motive becomes of paramount importance. In fact, the case against Dr. Bussey, in the absence of any testimony tracing the papers into his possession, rested, as it necessarily must, upon three things:

1. That the papers were missing, and could not be found.

2. That Dr. Bussey was last seen near them, and had the opportunity to take them.

3. And, not least, that he had a motive for taking them.

It was for the jury to determine, from the facts and circumstances proven in the case, whether the doctor had any such motive. It was not for Mr. Wilson or any other witness to state his inferences, and there could be no expert evidence in this matter. The movings of the heart and mind which might prompt him or Mrs. Bussey to action as regarded these papers were for the jury to ascertain and determine from the testimony. The study of human nature, and the emotions that move mankind to action, criminal or otherwise, has not yet become a special science, in which lawyers, or any other particular class, are recognized as experts.

The charge of the court was eminently fair, and without fault; but, for the reasons heretofore given, the conviction must be set aside, and a new trial granted.

It is to be hoped that the lesson of this trial will not go unheeded. Wise and judicious conduct on the part

of the prosecutor in every criminal trial is called for, and will nearly always obviate the difficulties encountered on this trial. Some person must conduct the next trial of this case who stands "indifferent between the accused and any private interest," and who is only concerned for the due and orderly administration of the law, and that justice may be done. We intend to find no fault with Mr. Parkinson. We have no doubt that he intended to do his whole duty without fear or favor, and we have great respect for him, and believe in his perfect integrity; but human nature is so constituted that, in the excitement of a heated trial, one whose mind is deeply biased and prejudiced must, perforce, as happened in this case, at times, let his rancor get the better of his judgment, to the detriment of that even-handed justice which is not only always, in fact, impartial, but ever has, also, such an appearance as to give all people confidence in the integrity and equity of the courts.

The other Justices concurred.