PEOPLE *v.* FITZSIMMONS.

1. CRIMINAL LAW—TRIAL—EVIDENCE—ACCESS TO RECORDS, ETC.

Having granted to the respondent in a criminal case opportunity to examine books and records of the private bank from which it was charged that respondent had embezzled funds, the trial court did not commit error in declining to permit him to have access to certain memoranda in the control of the prosecuting attorney, showing the results of the work of experts or accountants upon the books of the bank.

2. SAME—VENUE—CHANGE—MOTIONS.

Refusal of the trial court to grant a change of venue to a respondent charged with embezzlement was not prejudicial or erroneous when the respondent did not exhaust his peremptory challenges at the trial, and his attorney announced that he was satisfied with the jury which was drawn.

3. SAME—PROSECUTING ATTORNEY—ADVERSE INTEREST—STATUTE.

A prosecuting attorney, who was a depositor in the bank from which it was charged the respondent had embezzled funds, was so interested in the case, based on the same state of facts, on the civil side, that he was disqualified from trying the case on the criminal side of the court, under the limitation of 1 Comp. Laws, § 2561 (1 How. Stat. [2d Ed.] § 1152).

Exceptions before sentence from Gogebic; Cooper, J. Submitted November 6, 1914. (Docket No. 166.) Decided December 18, 1914.

Matthew A. Fitzsimmons was convicted of embezzlement. Reversed.

*James A. O'Neill,* Prosecuting Attorney, for the people.

*Herb M. Norris* (*Frank B. Lamoreux,* of counsel), for respondent.

MOORE, J. This case comes here on exceptions before sentence.

The respondent was charged and convicted under section 11591, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14646), which provides:

"If any officer, agent, clerk, servant, employee or lessee of any incorporated company, foreign or domestic, or if any agent, clerk, servant, employee or lessee of any private person, or of any copartnership, except apprentices and other persons under age of sixteen years, or if any attorney at law, collector or other person, who, in any manner, receives or collects money or any other property for the use of and belonging to another, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle and convert to his own use without the consent of his employers, master, or the owner of the money or goods collected or received, any money or property of another or which is partly the property of another and partly the property of such agent, clerk, servant, employee, lessee, attorney at law, collector or other person, which has come to his possession or under his care in any manner whatsoever, he shall be deemed to have committed larceny. * * * *Provided, further,* that failure, neglect, or refusal of such officer, agent, clerk, servant, employee, lessee, attorney at law, or other person to pay, deliver or refund to the proper person, company or copartnership such money or goods entrusted to his care, upon demand, shall be *prima facie* proof of intent to embezzle."

The information charged the respondent, in four counts, with the embezzlement, "on the 22d day of July, A. D. 1907, and on divers other days and times between said 22d day of July, A. D. 1907, and the 20th day of May, A. D. 1912," of $210,000 of the money and property of his employer, Fritz Karste, which came into his possession by virtue of his employment as agent and servant. A count for larceny was also included in the information, which count was abandoned on the trial.

There are upwards of 600 assignments of error, a record of upwards of 2,000 printed pages, and the briefs of counsel for appellant contain more than 1,000 pages. It is apparent that a smaller record, fewer assignments of error, and much less voluminous briefs would have presented every meritorious question. We shall discuss but few of the assignments of error, and shall quote but little of the testimony.

For many years Fritz Karste of Sheboygan, Wis., was the owner of a bank in the city of Ironwood in this State. For many years respondent was cashier of this bank. Mr Karste died in May, 1912. Shortly after the death of Mr. Karste, a special administrator was appointed, and a few days later three accountants were employed, who found a shortage in the funds of the bank of upwards of $100,000. Later this criminal proceeding was instituted with the result already stated. After the conviction of the respondent a motion for a new trial was made, which motion was overruled; the trial judge filing an elaborate written opinion stating his reasons for so doing.

The first group of assignments requiring attention relates to the refusal of the judge to direct a verdict of not guilty, for the reason that the people had failed to make a case against respondent. It would profit no one to review the testimony. We shall content ourselves with saying that there was an abundance of competent testimony which, if believed, justified the verdict.

Another group of assignments relates to the refusal of the court to require the prosecuting attorney to deliver certain written memoranda in his possession made by the accountants to the attorneys for the respondent. The court had allowed to the respondent and his attorneys the fullest access to the books and papers of the bank. This being so, we think his ruling well within his discretion.

Error is assigned to the refusal of the court to grant a change of venue. But two affidavits were made in favor of this motion. A jury was obtained with which the respondent announced himself as satisfied before his peremptory challenges were exhausted. The court did not commit error in this respect. See *People* v. *Swift*, 172 Mich. 473 (138 N. W. 662).

A group of assigned errors relate to the conduct of the prosecuting attorney, and especially to his argument to the jury. As the case must be reversed for a reason which will be stated later, we find it unnecessary to decide whether this was reversible error. While zeal in a prosecuting attorney is to be commended, and it is apparent that the attorneys for the respondent were not without zeal, and their conduct was very trying, to say the least, to the prosecuting officer, we are compelled to say that we think the record would be more satisfactory if some of the language used by the prosecutor had been unsaid. See *People* v. *Gotshall*, 123 Mich. 474 (82 N. W. 274); *People* v. *Lieska*, 161 Mich. 630 (126 N. W. 636); and *People* v. *Huff*, 173 Mich. 620 (139 N. W. 1033).

A group of assignments of error relates to the overruling of a motion that the prosecuting attorney be prevented from taking part in the trial because of being interested. The record shows he was a depositor in the Bank of Ironwood. He acted as counsel for the special administrator in some matters growing out of the administration of the estate, but claims that none of them involved the respondent or his dealings with the bank. We quote from the brief of the prosecuting attorney:

"A petition was filed, asking the appointment, in Michigan, of the Wisconsin administrator, and another who was a resident of the city of Ironwood, and obviously friendly to the interests of respondent, who was under arrest and undergoing examination at that time. As the books and records of the Bank of Iron-

wood contained a large part of the evidence against respondent and would be delivered into the possession of the person or persons appointed administrator in Michigan, the prosecuting attorney was opposed to the appointment of the administrators which respondent's counsel sought to have appointed. On request of some creditors, Mr. O'Neill appeared gratuitously in the probate court and objected to the appointment of those persons, or either of them which respondent's counsel was seeking to have appointed. There was no employment, however, by these creditors of the prosecuting attorney, as their private attorney; that is, there was no hiring for compensation. The statement repeatedly made throughout the entire brief of respondent that the prosecuting attorney was employed by 75 per cent. of the creditors of the bank is absolutely untrue, and is unsupported by the record. No proof at any time was offered of any employment of Mr. O'Neill by any creditor of the bank, and the undisputed evidence is that Mr. O'Neill never was employed as attorney for any of the creditors and never acted as attorney for any of the creditors except in the probate proceedings as before stated."

The trial judge was in grave doubt about overruling the motion, but finally decided to do so.

Section 2556, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1152), defines the duty of prosecuting attorneys. Section 2561 provides:

"No prosecuting attorney shall receive any fee or reward from or on behalf of any prosecutor or other individual for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counsel for either party other than for the State or county in any civil action depending upon the same state of facts upon which any criminal prosecution commenced or prosecuted shall depend, or in any action for malicious prosecution commenced or prosecuted during his term of office in the county of which he is prosecuting attorney; nor shall any attorney be permitted to prosecute, or aid in prosecuting any person for an alleged criminal offense where he is engaged or interested in any civil

suit or proceeding depending upon the same state of facts, against such person directly or indirectly."

This statute has been frequently construed by this court. *People* v. *Cline,* 44 Mich. 290 (6 N. W. 671) ; *People* v. *Hillhouse,* 80 Mich. 580 (45 N. W. 484) ; *People* v. *Bussey,* 82 Mich. 49 (46 N. W. 97) ; *McCurdy* v. *Insurance Co.,* 115 Mich. 20 (72 N. W. 996) ; *Harley* v. *Ionia Circuit Judge,* 140 Mich. 642 (104 N. W. 21), and the cases there cited.

In the instant case respondent was defending upon the theory that another than himself caused the shortage in the funds of the bank. The same state of facts which would sustain his conviction if shown would establish his civil liability to the bank. The prosecuting attorney was a depositor in the bank, which gave him a direct interest in its assets, one of which might be the liability of the respondent. We think this brings him within the language of the statute and the cases cited.

We have examined the other assignments of error, but think it unnecessary to discuss them, as they are not well taken or are not likely to arise again.

The conviction is set aside, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.