*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

DEONTA DUWAND SIMPSON,

   Defendant-Appellant.

UNPUBLISHED
May 11, 2023

No. 353398
Jackson Circuit Court
LC No. 19-001000-FH

---

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant, Deonta Duwand Simpson, appeals of right his convictions on one count of possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(*i*); and one count of possession of cocaine with intent to deliver, MCL 333.7401(2)(a)(*iv*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 144 to 360 months on the two counts. After moving unsuccessfully for a new trial, defendant now argues that his motion for a new trial should have been granted based on newly discovered evidence and that defense counsel rendered ineffective assistance because of her conflict of interest. We affirm.

## I. FACTUAL BACKGROUND

On February 26, 2019, Officer Joe Merritt and Detective Sam Sukovich were part of a team of law-enforcement officers conducting surveillance of suspected drug activity at a house located at 329 West Franklin Street in Jackson. After arriving to execute a search warrant at that house, law-enforcement officers saw four people leave the house and get into a vehicle parked behind the house. When the four people in the vehicle saw the officers approaching, the front-seat passenger (later alleged to be Anthony Estes) left the vehicle and ran. Officer Merritt gave chase on foot but he was unable to apprehend the fleeing passenger. Defendant and his nephew, Damarius Simpson, left the vehicle on the driver's side and defendant threw a baseball-sized object over a nearby fence while walking away from the officers. Eventually, defendant and his nephew complied with police commands to stop and they were apprehended. The fourth person sitting in the vehicle, Dion Scott, was apprehended after remaining in the vehicle with his hands up. Detective Sukovich found the sandwich bag thrown over the fence, and laboratory analysis by the Michigan State Police Forensic

Science Division confirmed that the bag contained cocaine and methamphetamine. Officers seized additional drugs, a loaded handgun, and a digital scale from inside the vehicle.

Defendant was charged and retained attorney Suzanna Kostovski to defend him in this case. Meanwhile, Kostovski also represented defendant's nephew, Damarius, in an unrelated case. The record does not reveal whether defendant was ever informed about any potential conflict arising out of Kostovski's representation of Damarius. After a two-day jury trial on October 14 and 15, 2019, defendant was convicted on the charges of possession of cocaine and methamphetamine with intent to deliver those drugs.

At the end of defendant's trial, Estes approached Kostovski and then signed an affidavit on October 18, 2019, stating that he was the person who fled from the vehicle and threw the bag of drugs over the fence. Defendant moved for a new trial based on the newly discovered evidence in the form of Estes's affidavit. Over the course of three years, the trial court conducted hearings on defendant's evolving request for a new trial. On November 22, 2022, the trial court issued a written opinion and order denying defendant's motion for a new trial. This appeal followed.

## II. LEGAL ANALYSIS

First and foremost, defendant asserts that the trial court erred in denying his motion for a new trial. We review the trial court's ruling on a motion for a new trial for an abuse of discretion. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *Id.* Defendant further insists that he was deprived of the effective assistance of counsel because his trial attorney was operating under a conflict of interest. An attorney acting with a conflict of interest denies the defendant the effective assistance of counsel by breaching " 'the duty of loyalty, perhaps the most basic of counsel's duties.' " *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). In order "to demonstrate that a conflict of interest has violated his Sixth Amendment rights," defendant has to establish " 'that an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* " '[T]he determination of the existence of a conflict of interest is a question of fact and should be reviewed under the clearly erroneous standard[.]' " *People v Pfaffle*, 246 Mich App 282, 288 n 5; 632 NW2d 162 (2001).

## A. MOTION FOR A NEW TRIAL

Defendant's effort to obtain a new trial was every bit as chaotic as it was protracted. First, defendant filed a motion for a new trial on October 30, 2019, which was only two weeks after the jury returned its verdict and before defendant was sentenced. The trial court addressed the motion, which included the affidavit of Anthony Estes, at a hearing on November 12, 2019. The trial court promised to conduct an evidentiary hearing on the motion, but insisted that that hearing would not take place until after defendant was sentenced on December 4, 2019. As it turned out, however, the sentencing hearing could not take place on that scheduled date because defendant removed his tether and absconded. Thus, on December 4, 2019, the trial court conducted a brief hearing where it issued a bench warrant for defendant's arrest. After defendant was arrested on the bench warrant, the trial court sentenced him on March 4, 2020.

On August 25, 2020, defendant filed a post-judgment motion for a new trial that referred to the motion he filed before he was sentenced. On November 1, 2021, the trial court took up that motion at a hearing where Kostovski and Joel Kershaw both appeared on behalf of defendant and Anthony Estes appeared as a witness for the defense. But the trial court informed Estes of his right against self-incrimination, which prompted Estes to invoke that right. As a result, the defense had no witness to call, so the trial court granted their request for an adjournment of the hearing on their new-trial motion.

When the hearing continued on March 7, 2022, Kostovski made an oral motion to withdraw as counsel for defendant in order to free herself to testify as a witness about what Estes said to her. The prosecutor vigorously objected, noting legal, ethical, and practical problems with Kostovski's proposed approach. Kershaw took over the responsibility as defendant's lead attorney and called defendant's nephew, Damarius Simpson, to testify for the defense. Damarius had not testified at defendant's trial, but more than two years after that trial ended he explained what happened on the day the search warrant was executed and defendant was arrested. He testified that the four men in the car that day were "smoking weed" when the police arrived, that the officers accused him of throwing the sandwich bag of drugs over the fence, that he did not see defendant throw anything that day, and that Estes—who was under 17 years of age then—had run away from the police that day. But Damarius conceded that he knew defendant had been charged with possessing the drugs in the sandwich bag and that defendant was going to trial on those charges.

Four weeks later, on April 4, 2022, the trial court heard testimony from Detective Sukovich and Attorney Kostovski. After the trial court granted Kostovski's motion to withdraw as counsel for defendant, Kostovski testified about her conversations with Estes. Specifically, she stated that, on the last day of defendant's trial, Estes told her that he was in the vehicle with defendant and the other two men (Damarius Simpson and Dion Scott) when the police arrived, that "he threw a bag of narcotics, took off running, he was chased by the police but they never caught up to him." Also, Kostovski testified that Estes tried to talk to the prosecutor in the courtroom on the last day of trial. The trial court then admitted into evidence the affidavit that Estes signed on October 18, 2019. In response, the prosecution called Detective Sukovich, who reaffirmed his testimony at trial that he saw defendant throw the bag of drugs over the fence. He also explained that the young man who ran from the vehicle and escaped did not throw anything. Finally, Detective Sukovich stated that Estes approached him in the courtroom after the jury returned its verdict in defendant's trial, that Estes admitted that he was the one who ran from the police and escaped, and that Estes "definitely [was] a juvenile" when he ran from the scene.

The trial court asked both sides for written briefs, but on May 20, 2022, Attorney Kershaw "was withdrawn as counsel" for defendant and Attorney Daniel Bremer was appointed to take the place of Kershaw. Then, on September 16, 2022, when the evidentiary hearing resumed, Bremer called Kershaw as a witness, thereby making Kershaw the second attorney who testified on behalf of defendant. As Bremer explained:

> I spoke with Susan [sic] Kostovski about this, she told me that she would invoke attorney/client privilege and not testify with respect to what Damarius Simpson told her and she cannot waive by her actions or otherwise the attorney/client privilege. So, I see her as an unavailable witness and because of that I'm going to ask Mr.

Kershaw about what she told him. I think that's a statement against interest, pure and simple.

Oddly, Bremer initially tried to elicit testimony from Kershaw about what Damarius Simpson told him, but Bremer ran headlong into a valid hearsay objection. Confusion set in at that point, so in order to make a comprehensive record, the trial court permitted Bremer to ask Kershaw about what Damarius Simpson had said to him. Next, Bremer asked Kershaw about what Attorney Kostovski told him, strongly suggesting that the rules of hearsay no longer had any bearing on the proceedings or even the legal analysis of the issues. That inquiry prompted Kershaw to explain that Kostovski had represented Damarius Simpson on "a relatively minor matter" and that Damarius Simpson told her in confidence "that that was his dope" that was thrown over the fence.

On November 22, 2022, the trial court finally brought an end to the madness by rendering an opinion and order denying defendant's motion for a new trial. Applying the four-part test that our Supreme Court prescribed in *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), the trial court carefully considered and rejected defendant's request for a new trial based upon newly discovered evidence. We readily conclude that the trial court did not abuse its discretion in ruling that defendant provided no basis for post-trial relief. Indeed, the record in this case offers a classic example of why " 'motions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor[.]' " *Rao*, 491 Mich at 279-280.

To obtain a new trial based upon newly discovered evidence, the defendant must establish: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. *Cress*, 468 Mich at 692. The most fundamental problem defendant faces is that evidence "is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *Rao*, 491 Mich at 281. Defendant knew the identities of the three others who were in the vehicle with him when the police arrived at 329 West Franklin Street with a search warrant. Indeed, Damarius Simpson was defendant's nephew, yet the record is bereft of evidence that defendant or his attorney made any attempt to obtain the testimony of his nephew at trial. Similarly, the record reveals that Anthony Estes attended defendant's trial and spoke with the people in the courtroom, yet neither defendant nor his attorney made any effort to put Estes on the witness stand. Therefore, defendant has utterly failed to establish that the testimony of those potential witnesses was newly discovered evidence.

Beyond that, defendant has come up short in showing that he "could not, using reasonable diligence, have discovered and produced the evidence at trial[.]" *Cress*, 468 Mich at 692. Even if Damarius Simpson and Estes might have invoked their Fifth Amendment right to avoid testifying, that does not excuse defendant from undertaking efforts to obtain their testimony. As our Supreme Court noted, "when the evidence is claimed to be unavailable because of a codefendant's assertion of the Fifth Amendment privilege, reasonable diligence might include requesting a severance or pursuing other procedural remedies to admit the testimony." *Rao*, 491 Mich at 284. "The point is that the law affords a defendant procedural avenues to secure and produce evidence" that must be employed "in a timely manner because evidence that is known to the defendant, yet not produced until after trial, will not be considered grounds for a new trial." *Id.*

Finally, defendant has failed to show that a different result is probable on retrial with the evidence that he describes as newly discovered. To determine whether newly discovered evidence makes a different result probable, a trial court must first consider whether the evidence is credible. *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018). The "trial court's credibility determination must bear in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder." *Id*. at 568. In this case, two law-enforcement officers testified at trial, and Detective Sukovich stated that defendant "had about a baseball sized object in his hand and he looked at me and then just lobbed it southbound over a fence into the yard of the residence directly south." Both witnesses whose testimony would be the newly discovered evidence purportedly established that Estes—rather than defendant or his nephew—was the one who threw the bag of drugs over the fence. But Officer Merritt, who chased the young man who ran from the vehicle, testified that he did not see anyone throw anything even though he kept a close eye on the young man from the very beginning of the chase. Consequently, even if Estes testified that he threw the bag of drugs over the fence, that testimony would not have overcome the interlocking testimony of the two law-enforcement officers. In sum, as the record makes clear, the trial court did not commit an abuse of discretion in denying defendant's new-trial motion based on newly discovered evidence.

## B. COUNSEL'S CONFLICT OF INTEREST

Defendant argues that defense counsel rendered ineffective assistance by operating under a conflict of interest that prevented her from pursuing and introducing evidence that would have exonerated defendant. But defendant did not raise this issue in the trial court, so the trial court had no reason to develop a record on the conflict-of-interest issue. Accordingly, our review on appeal is restricted to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

To demonstrate that a conflict of interest violated his Sixth Amendment rights, "defendant 'must establish that an actual conflict of interest adversely affected his lawyer's performance.' " *Smith*, 456 Mich at 556. Attorney Kostovski explained that she had reservations about testifying during the evidentiary hearing because of her attorney-client relationships with both defendant and Damarius. Other than that, the only evidence regarding her conflict of interest came from Attorney Kershaw, who testified about statements Kostovski made to him about Damarius Simpson's talks with her. Those statements, which constituted hearsay within hearsay, provided little information about the nature of Kostovski's purported conflict of interest.

Defendant contends that because of Kostovski's conflict of interest, she did not interview the other occupants of the vehicle and she did not have the bag that contained the drugs tested for fingerprints or DNA. But defendant did not offer any evidence to establish that Kostovski did not interview or consider calling witnesses, nor did defendant provide any evidence that any witnesses would be willing to testify. In fact, the decision by Estes to exercise his Fifth Amendment right to remain silent at the post-trial hearing on defendant's motion for a new trial bore no relationship to the alleged conflict of interest. Moreover, Damarius was called as a witness during the post-trial evidentiary hearing, but he provided no evidence as to whether he was interviewed or considered as a witness during trial preparation. Therefore, although defendant speculates that witnesses were not interviewed because of the conflict of interest, he has offered no support for that allegation.

Similarly, defendant has failed to provide evidence to show that Kostovski did not consider DNA testing during trial preparation. Record evidence revealed that DNA testing was not standard policy. Law-enforcement agencies test contents, rather than packaging, due to the risk of fentanyl transfer. Therefore, defendant would have had to seek testing on his own. Defendant speculates that Kostovski's decision not to obtain independent laboratory analysis for DNA *could have* been because of her conflict of interest, but mere speculation does not establish that defense counsel's performance was adversely affected. Defendant offered no proof that independent DNA analysis would have exonerated him. Accordingly, defendant has not established that his defense counsel labored under "an actual conflict of interest [that] adversely affected his lawyer's performance." See *Smith*, 456 Mich at 556.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates