# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHAWN KRISTI DICKEN,

      Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 322998
Midland Circuit Court
LC No. 13-005531-FH

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

A jury convicted defendant of one count of conducting a criminal enterprise, MCL 750.159i(1), seven counts of obtaining money by false pretenses in an amount of $1,000 or more but less than $20,000, MCL 750.218(4)(a), and one count of embezzlement of a vulnerable adult in an amount of $50,000 or more but less than $100,000, MCL 750.174a(6)(a). The trial court sentenced defendant to concurrent prison terms of 140 months to 20 years for the criminal enterprise conviction, 23 months to 5 years for each false pretenses conviction, and 71 months to 15 years for the embezzlement conviction. Defendant appeals as of right. We affirm defendant's convictions and her sentences for false pretenses and embezzlement, but remand for further proceedings regarding the reasonableness of defendant's departure sentence for the conducting a criminal enterprise conviction.

This case resulted from allegations that defendant, a registered representative or broker who worked for the Diversified Group, placed the funds of many clients into a risky limited partnership investment in which they lost substantial portions of their principal. The prosecutor asserted that defendant did so in order to obtain commissions and that, to convince her clients to enter into these risky investments, she misled them as to the risk to their principal and the liquidity of the investment. In addition, several of defendant's clients testified that their signatures on various documents had been forged.

On appeal, defendant first argues that she is entitled to a new trial because, contrary to MCR 6.201(B) and in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the prosecution failed to produce various documents and materials in its possession. Defendant contends that she was entitled to discovery of materials the prosecutor gathered pertaining to other Diversified Group employees, material obtained pursuant to a search warrant

-1-

executed at a credit union for Triton Commercial Lending,[1] and evidence pertaining to the operation of Diversified Group by a receiver.[2]  We disagree.

"[D]iscovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201." *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447; 722 NW2d 254 (2006).  Material subject to discovery must be specified in the court rule, or the party seeking discovery must establish good cause for the trial court to order discovery.  See *People v Phillips*, 468 Mich 583, 584, 593; 663 NW2d 463 (2003).  MCR 6.201(B) provides:

> **(B) Discovery of Information Known to the Prosecuting Attorney.** Upon request, the prosecuting attorney must provide each defendant:
>
> (1) any exculpatory information or evidence known to the prosecuting attorney:
>
> (2) any police report and interrogation records concerning the case, except so much of a report as concerns a continuing investigation;
>
> (3) any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial;
>
> (4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and
>
> (5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.

Defendant requested "a copy of the complete investigative file, including the reports involving the other employees and contractors at the Diversified Group."  Defendant acknowledges that some of the material to which she sought access pertained to a different investigation, i.e., that of Triton Commercial Lending.  MCR 6.201(B)(2) clearly limits discovery of reports to reports concerning "the case[.]"  Defendant cites no authority for her position that the requirement that the prosecution provide discovery extends to material from

---

[1] Defendant owned Triton Commercial Lending.

[2] Defendant moved in the trial court to compel discovery pursuant to MCR 6.201(B), thereby preserving the discovery issue.  We review a trial court's decision regarding discovery for an abuse of discretion.  *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).  However, defendant did not allege a *Brady* violation below.  Accordingly, defendant's claim premised on *Brady* is unpreserved, and our review of that issue is limited to plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

another case. Accordingly, the trial court did not abuse its discretion by denying defendant's request for further discovery under MCR 6.201(B)(2).

Defendant also argues that the prosecution's failure to produce the requested materials violates *Brady*, in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. In *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014), our Supreme Court stated that the components of a *Brady* violation are that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." A defendant has the burden of proving the elements of a *Brady* violation. See *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007).

Defendant states only that the requested materials might have contained evidence favorable to her. She gives no specific examples of information that was contained in these materials that might have assisted in her defense, nor did she request the trial court to conduct an in camera inspection. To be subject to discovery under *Brady*, evidence must be favorable to the defense and material. *Chenault*, 495 Mich at 150. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. Evidence is material if " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*., quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985). The mere possibility that evidence might be helpful is not sufficient to establish materiality. *United States v Agurs*, 427 US 97, 109-110; 96 S Ct 2392; 49 L Ed 2d 342 (1976). Because defendant's mere contention that the requested materials might have contained favorable evidence is insufficient to establish that the evidence she sought was material, defendant has not established a *Brady* violation.

Next, defendant argues that the prosecution's expert, Joseph Spiegel, an attorney and expert in the area of securities law, should not have been allowed to testify because the prosecution's pretrial summary of his proposed testimony was insufficient to meet the requirements of MCR 6.201(A)(3).[3] We disagree.

MCR 6.201(A)(3) states that upon request, a party must provide to other parties:

> [T]he curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion[.]

---

[3] Defendant preserved this issue by challenging the adequacy of the prosecution's pretrial summary of Spiegel's proposed testimony in a motion before trial, which the trial court denied. We review the trial court's decision on the motion for an abuse of discretion. *Davie (After Remand)*, 225 Mich App at 597-598.

Before trial, the prosecution provided the defense with a written summary of Spiegel's proposed testimony. The written summary stated:

> The substance of this testimony will be to educate the jury regarding securities, primarily what a security is and how they are regulated. He will testify as to the various licenses issued to investment advisors, the duties owed by advisors to their clients and the rationales for those duties.

> Mr. Spiegel will opine that your client breached a number of duties owed to her clients including making material misrepresentations of facts, omitting to disclose material facts, the suitability of the investments sold to clients, and her duty to employ due diligence in knowing the investments she was marketing.

> The underlying bases for these opinions are Mr. Spiegel's knowledge of securities and a recitation to him of the accounts of [defendant's] victims, such as her not disclosing the risk of the investment, its lack of liquidity, her telling clients that there was no risk in the investment, her failure to conduct any investigation to the suitability of senior citizens investing substantial amounts of money in such a speculative and long term venture, and her failure to independently investigate the investment.

Defendant argues that the written summary did not "comply with the spirit of the rule," and she contends that a written summary "requires a level of precision which puts a person trained in the same industry as the expert to know the areas encompassed."[4] We conclude that the trial court did not abuse its discretion in finding that the prosecution's summary of Spiegel's testimony was sufficient to satisfy MCR 6.201(A)(3). The written summary sets out the substance of Spiegel's testimony, his opinion, and the bases for that opinion. The trial court's statement of the matters to which Spiegel could testify indicates that Spiegel's testimony would relate to the specific facts of the alleged offenses and would rely on general securities law to opine that defendant breached various duties. Moreover, the record discloses that defendant vigorously cross-examined Spiegel, and there is no indication that defendant was unable to question Spiegel due to a lack of understanding of the bases of Spiegel's opinion. Defendant has made no showing that the lack of further information regarding Spiegel's testimony prevented her from countering Spiegel's testimony. Defendant has not demonstrated that the trial court

---

[4] Defendant relies on patent cases that discuss 35 USC 112, a statute that requires a patent to "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." This reliance is misplaced. 35 USC 112 applies only to a specialized area of law, whereas MCR 6.201 applies to discovery in general.

abused its discretion in ruling that the written summary of Spiegel's proposed testimony complied with MCR 6.201(A)(3).

Defendant also argues that Spiegel offered improper testimony setting forth legal conclusions.[5] Defendant, however, has not demonstrated a plain error associated with Spiegel's testimony. Spiegel did not testify that defendant was guilty of a crime. Instead, he testified that defendant acted negligently by failing to use due diligence on the limited partnership investment and by selling the investment to clients who could not afford the risk. Negligence is not sufficient to establish guilt of the charged crimes. The questions of intent and criminal responsibility were left solely to the jury. Accordingly, defendant has not satisfied her burden of demonstrating a plain error.

Next, defendant argues that the trial court abused its discretion by refusing to admit the entirety of defendant's 75-minute recorded interview with state investigators. Defendant asserts that the trial court's exclusion of this evidence prevented her from presenting a defense, and thus denied her due process.[6] We disagree.

Relevant evidence is generally admissible. MRE 402. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Defendant sought to admit the 75-minute recording of her interview with state investigators during an investigator's testimony in order to show that she cooperated with investigators. She also asserted that the evidence could support a conclusion that she lacked the intent to commit a crime at the time the alleged offenses occurred. The trial court expressed concern about confusion of the issues, and on that basis, denied defendant's request to play the entire recording. Although the trial court added that defendant could play portions of the recording for impeachment purposes, defendant made no attempt to do so.

We conclude that the trial court did not abuse its discretion by denying defendant's request to admit the entire recording. The trial court's MRE 403 concerns were legitimate. Defendant's sole stated purpose for seeking to admit the recording was to show that she cooperated with investigators. However, the investigator testified that defendant cooperated and provided written information upon request. Therefore, the trial court had a principled basis for its conclusion that the interview was not necessary to show that defendant cooperated, and that considerations of undue delay, waste of time, or needless presentation of cumulative evidence

---

[5] Defendant did not object below on the ground that Spiegel's proposed testimony sought to present inadmissible legal opinions, and she did not object at trial to Spiegel stating legal conclusions. Therefore, defendant's complaint regarding the scope of Spiegel's actual testimony is unpreserved and review is limited to plain error affecting substantial rights. *Carines*, 460 Mich 763-764.

[6] "We review for abuse of discretion a trial court's decision to admit or exclude evidence." *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001).

justified exclusion of the entire 75-minute recorded interview. The trial court permitted defendant to play portions of the recording for impeachment purposes, but she chose not to do so. Accordingly, the trial court did not abuse its discretion by denying defendant's request to play the entire recording.

Moreover, the trial court's exclusion of this evidence did not violate her constitutional right to present a defense. Although a criminal defendant has a state and federal constitutional right to present a defense, Const 1963, art 1, § 13; US Const Ams VI, XIV; *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002), that right is not absolute. *People v Unger,* 278 Mich App 210, 250; 749 NW2d 272 (2008). "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Defendant's purpose for seeking to admit the recording was to show that she cooperated with investigators. The trial court did not prevent defendant from presenting or eliciting evidence of her cooperation. The investigator who interviewed defendant admitted that defendant was cooperative. Defendant also testified that she cooperated with investigators. To the extent that the prosecution sought to present evidence suggesting otherwise, the trial court permitted defendant to introduce portions of the recorded interview for impeachment. Accordingly, defendant was not denied the opportunity to present a defense.

Next, defendant argues that the prosecutor committed misconduct by misleading the jury into believing that a durable power of attorney held by a relative of one of defendant's elderly victims was akin to a guardianship and by suggesting that it was improper for defendant to deal directly with the elderly victim.[7] We disagree.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). A durable power of attorney is defined as "a power of attorney by which a principal designates another as the principal's attorney in fact in a writing" that contains specific wording. MCL 700.5501(1). A guardian is appointed after a person has been found to be legally incapacitated. A guardian must be appointed in a court proceeding. MCL 700.5303.

The only remarks by the prosecutor that defendant directly challenges as improper are the following comments made during opening statement:

---

[7] Because defendant did not object to the prosecutor's statements regarding the power of attorney, or to the relative's testimony on that subject, this issue is unpreserved. This Court generally reviews a claim of prosecutorial misconduct de novo, *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001), but because this issue is unpreserved, review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

> [Defendant] knows that [the victim] has a Power of Attorney for her financial affairs. [Defendant] meets with [the victim] and the Power of Attorney to discuss this investment.
>
> They're not satisfied. Not sure. So they tell [defendant] that they are going to be out of state back in December of 2011. They set up a meeting afterwards to make a final decision.
>
> While the Power of Attorney is out of state, [defendant] goes to the nursing home where [the victim] is and consummates the deal for $54,000.

The prosecutor did not misrepresent the relative's legal status or authority in these remarks. Rather, the prosecutor accurately represented that the relative had a power of attorney that gave him authority over the victim's financial affairs. The prosecutor's remarks did not indicate that the victim lacked the ability to act on her own behalf. Accordingly, there was no plain error.

Furthermore, defendant has not demonstrated a plain error associated with the relative's testimony. The scope of the relative's authority, as well as the victim's ability to act on her own behalf, was fully explored during the relative's testimony. The witness testified that he held a power of attorney for the victim, but he never asserted that he was the victim's guardian or that the victim lacked the authority or ability to make her own financial decisions. A fair reading of the witness's testimony as a whole reveals that the witness felt a responsibility toward his elderly cousin to look out for her best interests, but he never testified that she had been adjudged legally incapacitated or that he was required to make financial decisions for her. The prosecutor did not state or imply that the power of attorney prevented the victim from making her own financial decisions. Accordingly, we find no error, plain or otherwise, associated with either the witness's testimony or the prosecutor's arguments relating to that testimony. Further, an attorney who testified for defendant stated that he reviewed the power of attorney, and he determined that it did not stop the elderly victim from making her own financial decisions. The testimony of the defense witness further protected defendant's substantial rights in connection with this issue. Therefore, we reject this claim of error.

Finally, defendant argues that the trial court abused its discretion by departing from the sentencing guidelines range of 51 to 85 months for her conviction of conducting a criminal enterprise, and imposing a sentence of 140 months to 20 years for that conviction.[8] Defendant argues that the trial court erred in finding that substantial and compelling reasons supported a departure from the guidelines range.

At the time defendant was sentenced, MCL 769.34(3) authorized a trial court to depart from the appropriate range established under the sentencing guidelines "if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." Recently, however, in *People v Lockridge*, 498 Mich 358, 373-374; 870 NW2d 502

---

[8] Defendant does not challenge her other sentences.

(2015),[9] our Supreme Court addressed the constitutionality of Michigan's sentencing guidelines and held that the guidelines violate the Sixth Amendment "to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e. the defendant's 'mandatory minimum' sentence[.]" The Court struck down the mandate in MCL 769.34(2) that a trial court impose a sentence within the guidelines range, and also struck down the requirement in MCL 769.34(3) that a trial court articulate substantial and compelling reasons for a sentence that departs from the guidelines range. *Id*. at 364-365. The Court held that "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392.

The *Lockridge* Court did not specify the appropriate procedure for determining whether a departure sentence is reasonable. However, this Court recently addressed and decided this issue in *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 23-24, and held that the reasonableness of a sentence is to be determined by utilizing the "principle of proportionality" test set out in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), which requires a court to impose a sentence that is proportionate to the seriousness of the offense and the offender. Factors utilized in determining proportionality include: "(1) the seriousness of the offense; (2) factors not considered by the guidelines . . . ; and (3) factors that were inadequately considered by the guidelines in a particular case[.]" *Steanhouse*, ___ Mich App at ___; slip op at 24 (internal citations omitted).

This Court in *Steanhouse* also addressed the question of remedy in pre-*Lockridge* cases where, as here, the trial court imposed a departure sentence and "was unaware of and not expressly bound by a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing." *Steanhouse*, ___ Mich App at ___; slip op at 25. This Court held "that the procedure articulated in *Lockridge*, and modeled on that adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), should apply" in such cases. *Steanhouse*, ___ Mich App at ___; slip op at 25, citing *Lockridge*, 498 Mich at 394-399.[10] See also *People v Shank*, ___ Mich

---

[9] Defendant's brief contains a request to hold this appeal in abeyance pending the Supreme Court's decision in *Lockridge*. Because the Supreme Court has decided *Lockridge*, this request is now moot.

[10] In *Lockridge*, the Supreme Court explained

[O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the "circumstances existing at the time of the original sentence." [*Lockridge*, 498 Mich 398 (citation omitted).]

App ___; ___ NW2d ___ (2015) (Docket No. 321534); slip op at 3 (following *Steanhouse*). Therefore, in accordance with *Steanhouse*, we remand this case to the trial court for further proceedings regarding the reasonableness of defendant's departure sentence for conducting a criminal enterprise, consistent with the procedure prescribed in *Crosby* and adopted in *Lockridge*.

Defendant's convictions and her sentences for false pretenses and embezzlement are affirmed, but we remand for further proceedings regarding the reasonableness of defendant's departure sentence for conducting a criminal enterprise consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Kurtis T. Wilder